IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRENE BOMANSKI | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-808 |
| | : | |
| v. | : | |
| | : | |
| US AIRWAYS GROUP, INC. | : | |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**Slomsky, J.**                                                                                                          **June 4, 2009**

**I.     INTRODUCTION**

   Before the Court is a Motion for Summary Judgment filed by Defendant US Airways Group, Inc. seeking to dismiss a personal injury claim filed by Plaintiff Irene Bomanski, an airline passenger on board a US Airways flight operated by Defendant.[1]  Plaintiff was struck in the head by another passenger's luggage which fell out of an overhead storage compartment prior to the aircraft's departure.  Plaintiff alleges that as a result of Defendant's negligence, she has sustained serious, painful and permanent injuries.  Defendant filed a Motion for Summary Judgment seeking to dismiss Plaintiff's claims on several grounds (Docket No. 13).  Plaintiff filed a Response (Docket No. 14) and Defendant filed a Reply (Docket No. 17).  There are three issues raised in the Motion for Summary Judgment and subsequent briefing which the Court must resolve:

   1.   Whether federal law preempts state law on the subject of air safety;

   2.   If so, whether Plaintiff's claims arise under an identified federal standard; and

---

[1] Plaintiff brought suit against Defendant under the incorrect name.  Defendant's Motion for Summary Judgment notes that the suit should have been filed against US Airways, Inc., instead of US Airways Group, Inc.

1

    3.    Whether Plaintiff has provided facts that Defendant operated the aircraft in breach of an identified federal standard of care.

For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

## II    BACKGROUND[2]

On March 1, 2006, Plaintiff was a passenger on US Airways Flight 346, scheduled to travel from Orlando, Florida to Philadelphia, Pennsylvania. (Comp. (Docket No. 1) at ¶ 4). After boarding the aircraft, Plaintiff sat in her aisle seat towards the rear of the aircraft. (Bomanski Dep. Oct. 14, 2008, Def. Motion for Summary Judgment, Ex. C at 47: 21-23, 48:23-24, 52:11-12). At no time did Plaintiff look inside the overhead compartment above her seat or place any of her belongings in the compartment. (Id. at 51:20-23, 73:12-22). When Plaintiff took her seat, the engine was on but the aircraft remained parked at the gate. (Id. at 57:2-9). Plaintiff described the aircraft as "full" and "slightly chaotic" during the boarding process. (Id. at 44:14-23).

Patrick Lenahan was a ticketed passenger on board the same flight as Plaintiff. (Lenahan Dep. Jan. 6, 2009, Def. Motion for Summary Judgment, Ex. D at 14:1-9). Mr. Lenahan had an aisle seat, one row behind and across from Plaintiff. (Id. at 28:10-12). Upon boarding the flight, Mr. Lenahan placed his suit jacket in the overhead compartment located directly above Plaintiff's seat because the overhead compartments above and across from his seat were full. (Id. at 27:18-20). According to Mr. Lenahan, there was still room in the compartment after he placed his jacket there. (Id. at 31:24-32:1-2). Mr. Lenahan left the compartment door open and took his assigned seat. (Id. at 28:10-12). Mr. Lenahan recalls that Defendant's flight attendants were present in the front and

---

[2] The facts are taken from the record presented on the Summary Judgment Motion and Response and viewed in the light most favorable to Plaintiff as the non-moving party.

back of the aircraft but did not have any contact with the overhead compartment where he had placed his jacket. (Id. at 73:2-74:9).

After Mr. Lenahan took his seat, another male passenger boarded the aircraft and placed a bag in the same overhead compartment above Plaintiff's seat and shut the compartment door. (Id. at 33:11-16). The male passenger had no difficulty storing his item or closing the overhead compartment. (Id. at 70:20-71:2). Defendant's flight attendants did not handle the item the passenger had loaded into this overhead compartment. (Id. at 71:7-12). No representative of Defendant had approached the overhead compartment anytime after Mr. Lenahan had placed his jacket there. (Id. at 77:11-20).

Moments after the passenger closed the compartment door, Mr. Lenahan stood up to rearrange his jacket. (Id. at 37:6-7). Upon opening the latch, the bag placed in the compartment by the male passenger fell and struck Plaintiff on the top of the head. (Bomanski Dep. at 66:10-12). In her deposition, Plaintiff estimated that the bag was twenty inches long. Id. Plaintiff admitted that she never handled the bag and could not determine its weight. Id.

Plaintiff concedes that the aircraft had not disembarked from the gate at the time of her injury. (Id. at 97:14-18). Flight attendants quickly responded to the accident and within ten to fifteen minutes, paramedics had arrived on board. (Id. at 74:22-75:1, 78:15). Plaintiff refused the paramedics' offer to provide further treatment and decided to remain on board the aircraft for its departure and flight to Philadelphia. (Id. at 80:13-24). Plaintiff alleges that as a result of the bag striking her in the head, she has sustained serious, painful and permanent injuries to various parts of her body. (Comp. at ¶ 14).

### III.     DISCUSSION

####    A.     Summary Judgment Standard

Defendant US Airways, Inc. has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact such that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Evidence is to be viewed in the light most favorable to the non-moving party.  Id.  A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motions and identifying the portions of the pleadings, depositions, interrogatories, admissions or affidavits, which demonstrate that there is no genuine issue of material fact.  Id.  Once the moving party has fulfilled its burden, the non-moving party must introduce specific evidence demonstrating a material issue of fact and the necessity for a trial.  Anderson v. Liberty Lobby, Inc, 477 U.S. 317, 324 (1986).

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial.  See Anderson, 477 U.S. at 325.  In ruling on Defendants' Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient.  Enough evidence must exist such that a jury could reasonably find for Plaintiff.  See id.  If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted.  See Anett v. Aspin, 846 F. Supp. 1234, 1237 (E.D. Pa. 1991).

**B.     Federal Law Preempts State Law on the Subject of Air Safety**

Plaintiff has filed suit in federal court based on diversity jurisdiction, alleging Defendant was negligent in operating and maintaining its aircraft. In cases where jurisdiction is founded on diversity of citizenship, a federal district court is bound to apply applicable state law to all substantive issues. See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000). Accordingly, this Court would be mandated to follow Pennsylvania law in regard to Plaintiff's claim for negligence. However, the Third Circuit has made clear that federal law exclusively establishes the standard for air safety. See generally, Abdullah v. American Airlines, Inc., 181 F.3d 363, 368 (3d. Cir. 1990) (holding federal law preempts state law in area of air safety). It is apparent through the enactment of the Federal Aviation Act ("FAA") that Congress intended to create a uniform system of regulation to ensure air safety.[3]

In Abdullah, the Third Circuit held, "Federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Id.* at 370.[4] The Abdullah Court's broad application of federal preemption has been rigidly followed by courts in this district and regularly applied in personal injury claims resulting

---

[3] The 1958 Federal Aviation Act ("FAA"), codified and as amended at 49 U.S.C. § 40103(b)(1) states: "The Administrator of the Federal Aviation Administration shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace. The Administrator may modify or revoke an assignment when required in the public interest."

[4] The Court notes a split in Circuits on whether federal law preempts state law claims in the field of air safety. See In re Air Crash Disaster at John F. Kennedy Int'l Airport, 635 F.2d 67, 74 (2d Cir. 1980) (holding FAA does not prevent state common law claims); Cleveland By and Through Cleveland v. Piper Aircraft Corp., 985 F.2d 1438 (10th Cir. 1993) (concluding FAA does not expressly or impliedly preempt state law tort claims) Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc., 555 F.3d 806 (9th Cir. 2009) (finding Federal Aviation Act did not preempt pregnant passenger's state law claim for personal injuries sustained on aircraft). The Abdullah case in the Third Circuit, which this Court is bound to follow, was decided to the contrary.

from fallen items stored in overhead compartments.  See Levy v. Continental Airlines, Inc., 2007 U.S. Dist. LEXIS 73027, No. 07-1266, at *17 (E.D. Pa. 2007) (holding that federal law provides pertinent standard of care for aviation safety and dismissing claims relating to state and local standards where plaintiff allegedly suffered injuries after being struck by item that fell out of overhead compartment); Allen v. Am. Airlines, Inc., 301 F. Supp. 2d 370, 374-80, 383 (E.D. Pa. 2003) (granting summary judgment for defendant airline in part based on federal preemption where airline personnel allegedly failed to prevent another passenger from opening overhead compartment causing piece of luggage to fall and strike plaintiff's head.)

Accordingly, Third Circuit case law is clear that federal law preempts state law in the area of airline safety and Plaintiff can only survive summary judgment if she has presented a claim under federal law.

### C.     Plaintiff Fails to Present Evidence of an Identified Federal Standard

The crux of Plaintiff's claim is that Defendant was negligent in its operation of the aircraft. In order to establish a claim for negligence, Plaintiff must demonstrate: (1) a duty owed to her by the airline; (2) a breach of that duty; (3) the breach actually and proximately caused her injuries; and (4) damages.  Allen, 301 F. Supp. 2d at 374.  However, as stated above, because Plaintiff's claim for negligence is preempted by federal law in the field of aviation safety, Plaintiff must set forth a claim for negligence alleging a specific federal standard of care (as defined by the FAA and related regulations) owed to her by Defendant. Landis v. US Airways, Inc., No. 07-1216, 2008 U.S. LEXIS 21300, at *8-10 (M.D. Pa. 2008).  Plaintiff has failed to provide facts bringing her within the ambit of a federal standard of care.

In a case factually analogous to this one, a court in this district granted summary judgment

6

for the defendant airline because the plaintiff failed to allege that defendant violated a federal standard of care. See Margolies-Mezvinsky v. US AIR Corp., No. 98-1525, 2000 U.S. Dist. LEXIS 736, at *5-6 (E.D. Pa. 2000).  In Mezvinsky, a passenger on board a US Airways flight opened an overhead compartment causing a piece of luggage to fall and strike the plaintiff. Id. at *1-2. Plaintiff sued US Airways under a negligence theory predicated on state law standards. Subsequently, US Airways filed a Motion for Summary Judgment which the court granted because plaintiff's state law claim was preempted by federal law.  The court noted that a negligence claim could still survive if the plaintiff established a violation of a standard of care created by federal airline safety laws and regulations. Id. at *5.  However, in Mezvinsky, the court determined that the plaintiff did not present any admissible evidence of a violation of a standard of care created by federal law. Id.  In granting the Motion for Summary Judgment, the court held that:

> "Any breach of duty claimed by [p]laintiff must come from federal law. Because [p]laintiff has not established that there exists a genuine issue of material fact, it is her duty to establish each element of her case.  As she has failed to set out a duty that US Air owes to her under federal law, [p]laintiff has not established a key element of her case."

Id. at *6.

Similarly, the Landis Court held that while a plaintiff's complaint made general references to federal law, the claims remained preempted in their entirety for failing to cite an identified federal standard that the defendant airline violated.[5]  See Landis, No. 07-1216, U.S. Dist. 21300, at *9.  In dismissing the action, the court in Landis noted "while the necessity of having to allege generally that US Airways was careless and reckless is clear, it is also clear that the specific federal standard

---

[5] Plaintiff attempts to distinguish Landis because there the Court was considering defendant's motion to dismiss, and thus applying a different standard than here.  This argument is unavailing, however, as the court applied the same rationale in Mezvinsky, granting a defendant's motion for summary judgment.

of care alleged to have been violated and which contributed to the careless and reckless operation of the aircraft must also be set forth." Id. at *8.

In this action Plaintiff has not specified a pertinent federal regulation applicable to the facts at issue or which would support the allegation of negligence under a federal standard of care. Similar to Landis, Plaintiff's complaint merely alleges that "the aircraft was operated and maintained in a reckless and careless manner so as to endanger the risk of injury to Plaintiff," and makes passing reference to Federal Aviation Administration laws, regulations and guidelines. (Comp. ¶ 19(k)).[6] Such a general passing reference is insufficient to establish a violation of a federal standard of care.[7] Accordingly, Plaintiff has failed to establish a federal law claim and her state law claim is preempted under the standard set forth in Abdullah and Mezvinsky.

### D. Plaintiff Has Not Provided Facts Sufficient to Prove a Breach of the "Careless or Reckless" Standard Under the Federal Aviation Regulations.

Even if this Court determines that the federal standard of care as defined under C.F.R. §

---

[6] When no specific standard of care is referenced, courts have turned to the general duty of care governing an airline's operation of its aircraft. This duty is specified in 14 C.F.R. § 91.13(a), which provides, "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." The Third Circuit has stated that reliance on this general requirement is appropriate where no precise regulation exists. Allen, 301 F. Supp. 2d at 375. Even applying this general standard to the case at bar, the Court finds that Plaintiff has failed to meet her burden.

[7] In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff also cites 14 C.F.R. § 121.589(b), which provides that an aircraft may not push back from the gate "unless at least one required crewmember has verified that each article of baggage is stowed in accordance with this section." This regulation is inapplicable, however, because as Plaintiff admits in her Deposition, the injury occurred while the aircraft was still at the gate and before a flight attendant was required to conduct the verification. (Bomanski Dep. at 74:22-75:1, 78:15.) Plaintiff further refers to Subsection 589(c) requiring that prior to takeoff or landing each article of baggage must be stowed "in a suitable…cargo stowage compartment…providing proper restraint for all baggage or cargo within." Similarly, because Plaintiff's injury occurred prior to take off, this regulation is also inapplicable. Accordingly, Plaintiff's assertion that either of these regulations establish the applicable federal standard of care in this case is misplaced. See Allen, 301 F. Supp. 2d at 374-75.

91.13(a) is applicable here, there is no evidence on the record to suggest that Defendant has breached that duty by "operating an aircraft in a careless or reckless manner so as to endanger the life or property of another."

In <u>Allen</u>, <u>supra</u>, the Court held, as a matter of first impression in this district, that a passenger injured by falling luggage does not constitute a violation of § 91.13(a). In reaching this conclusion, the Court in <u>Allen</u> identified other instances where courts from other districts had found that a violation of § 91.13(a) had occurred. <u>See</u> <u>Allen,</u> 301 F. Supp. 2d at 376. The <u>Allen</u> Court found that where a violation of § 91.13(a) did exist, the behavior alleged "was far more extreme and carried far graver consequences than Defendant's challenged conduct here." <u>Id.</u> The court further noted that § 91.13(a) is reserved only for egregious conduct where the potential for harm is incontestably high, citing to cases where there was an imminent threat of danger or dire physical injury to the passengers. <u>Id.</u> at 376-78; (citing <u>Watkins v. Nat'l Transp. Safety Bd.</u>, 178 F.3d 959 (8th Cir. 1999) (upholding § 91.13(a) violation where pilot flew into known or forecast icy conditions); <u>Nehez v. Administrator</u>, 30 F.3d 1165 (9th Cir. 1994) (court upheld violation of § 91.13(a) when pilot executed takeoff with only half runway visibility required by his employer's operations specifications); <u>Johnson v. Nat'l Transp. Safety Bd.</u>, 979 F.2d 618 (7th Cir. 1992) (upholding a § 91.13(a) violation where pilot allowed his co-pilot to operate under influence of alcohol)). The <u>Allen</u> Court concluded that falling luggage neither "equates or even approaches the grave, highly endangering actions previously found to have breached § 91.13(a)." <u>Id.</u> at 378.

Here, Plaintiff's injury occurred while the aircraft was parked at the gate. Defendant's flight attendants administered medical assistance to Plaintiff almost immediately and she decided to remain on board for the flight. Plaintiff argues that because the aircraft was "hectic" and "full" and the flight

attendants failed to offer or provide assistance with the placement of baggage, their omissions constitute a breach of the careful operation of the aircraft. However, as noted in Allen, falling luggage or the lack of assistance in storing items does not jeopardize human safety as severely as a takeoff or landing in known dangerous conditions. Furthermore, because Plaintiff admits that the flight attendants did not handle the bag nor assist the passenger or Mr. Lenahan in operating the overhead compartments, there is no evidence on this record that they failed to prevent a known danger. The accident occurred before Defendant's flight attendants were required to make their routine inspection before takeoff to ensure the overhead compartments were secure.

In further support of allegations of "careless and reckless" conduct on behalf of the Defendant, Plaintiff's Response cites to a string of cases where courts have denied summary judgment to defendant airlines. None of the cases Plaintiff cites emanate from courts in the Third Circuit. These cases are distinguishable for three reasons.

First, in these cases the accidents occurred after the flight attendants checked or should have checked the overhead compartments to ensure they were secure. See Barrerra v. American Airlines, No. 98-2685, 2002 U.S. Dist. LEXIS 9394 (S.D.N.Y., May 24, 2002) (accident took place prior to landing but after flight attendant insured that all overhead compartments were closed); Monter v. Delta Airlines, Inc., No. 00-0244, 2002 U.S. Dist. LEXIS 13868 (W.D.N.Y., June 24, 2002) (accident occurred after luggage was inspected and aircraft had landed); Aponte v. Trans World Airlines, Inc., No. 94-6337, 1996 U.S. Dist. LEXIS 13567 (S.D.N.Y., September 16, 1996) (flight Service Manager conducted "walk through" of the aircraft prior to landing to observe whether all overhead compartments were closed). Here, as admitted by Plaintiff, none of Defendant's representatives had any contact with the overhead compartment prior to the incident. Further,

10

because the aircraft had yet to leave the gate, Defendant was not required at that time under Federal Regulations to inspect the overhead compartments for safety.

Second, the cases Plaintiff cite all originate from circuits that have held that the FAA regulations do not preempt state law standards, which is not the law in the Third Circuit. See generally Barrerra, No. 98-2685, 2002 U.S. Dist. LEXIS 9394 (holding that New York Law imposes duty of reasonable care on defendant, as common carrier and as owner of aircraft, to take reasonable precautions to protect patrons from dangers which are foreseeable); Monter, No. 00-0244, 2002 U.S. Dist. LEXIS 13868 (same); Aponte, No. 94-6337, 1996 U.S. Dist. LEXIS 13567 (same); Andrews v. United Airlines, 24 F.3d 39 (9th Cir. 1994) (reaffirming that absent preemption, state law applies in diversity actions in federal district court).  The standard of care applied in these cases is the legal standard of the individual states, not the federal "careless and reckless" standard which arguably applies here.

Finally, these cases turn on whether the items stowed were inappropriate for the overhead compartment and inconsistent with their intended use.  Compare Barrerra, No. 98-2685, 2002 U.S. Dist. LEXIS 9394 (unusual item such as golf club may create sufficient risk to raise triable issue as to negligence); Monter, No. 00-0244, 2002 U.S. Dist. LEXIS 13866 (reasonable jury might conclude that by allowing passenger to board with and stow golf bag in overhead compartment and not assisting with removal therefrom, defendant breached its duty to plaintiffs); Aponte, No. 94-6337, 1996 U.S. Dist. LEXIS 13596 (under New York law jury could determine that airline has duty to stop passengers from stowing items which may be inappropriate for overhead compartment- such as radio); with Andrews, 24 F.3d 39 (plaintiff does not allege any facts to indicate that bag that caused her injuries was in fact inappropriate for overhead storage.)  Here, there is no evidence on

11

the record that the passenger's suitcase was oversized, too heavy or otherwise inappropriate for the intended use of the overhead compartment.  To the contrary, Plaintiff admits the bag was only approximately twenty inches long and within the size limit for carry on luggage.

Plaintiff has failed to allege any genuine issue of material fact sufficient to demonstrate that Defendant acted in a careless or reckless manner as defined by the FAA.  As a matter of law, Plaintiff presents no evidence to establish that Defendant breached an identifiable federal standard of care.  Accordingly, Defendant's Motion for Summary Judgment should be granted.

An appropriate order follows.